UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DREW BREES and DAVID PATTEN | * | CASE NO.    13-4760 |
| | * | |
| | * | |
| Plaintiffs, | * | Judge: HELEN G. BERRIGAN |
| | * | |
| Versus | * | Mag.: DANIEL E. KNOWLES, III |
| | * | |
| KEVIN HOUSER, SECURITIES | * | |
| AMERICA, INC., and AMERICAN | * | |
| INTERNATIONAL SPECIALTIES | * | |
| LINES INSURANCE CO., | * | |
| Defendants | | |

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

SECOND SUPPLEMENTAL AMENDED AND RESTATED COMPLAINT

Now comes Plaintiffs, who amend and supplement the original complaint and respectfully represents and avers as follows:

1.     Plaintiff, **Drew Brees,** is a person of the full age of majority and a resident of the City of New Orleans, State of Louisiana.

1a.    Plaintiff, David Patten, is a person of the full age of majority and was a resident of the City of Mandeville, State of Louisiana at all times relevant herein.

2.     Made defendants herein are:

A.     **Kevin Houser** ("Houser"), a person of the full age of majority and a resident of the State of Ohio.

B.     **Securities America, Inc.** ("Securities America"), a Delaware Corporation with its principal place of business in the State of Ohio, doing business in Louisiana, including at 601 Poydras Street, in the City of New

1

Orleans, State of Louisiana.

C.    **American International Specialties Lines Ins., Co.**

("American International"), a foreign insurance company authorized to be

engaged and actually engaged in the business of insurance within the State

of Louisiana.

## Jurisdiction

3.    This Court has jurisdiction pursuant to 28 U.S.C. §1332 in that this is

a civil action where the matter in controversy exceeds the sum or value of

$75,000, exclusive of interest and costs, and is between citizens of different

States.

## Facts &Causes of Action

4.    Defendant Houser is a licensed securities broker with experience in the

sale of investment tax credits issued by the State of Louisiana for the

promotion of its movie industry.

5.    Defendant Houser has been employed as a registered representative of

Securities America, Inc., since January 2009.  Prior to this time, he was a

registered representative of Brecek & Young, which Securities America, Inc.,

acquired in January 2009.

6.    Defendant Houser, a former professional football player with the New

Orleans Saints, promoted, as an agent of and/or in association with

Defendant Securities American Inc., the tax credits to Plaintiffs who were

teammates, as a means to raise money for Louisiana Film Studios, LLC

(LFS) in exchange for which the Plaintiffs would receive the tax credits.

7.    In November of 2008, Houser informed Plaintiff, Drew Brees, at a meeting at the New Orleans Saints Training Facility, located in Metairie, Louisiana, and others that Wayne Read, ("Read") through LFS, had qualified for State Tax Credits (Louisiana Infrastructure Tax Credits), which are marketable to third parties and others for the purpose of raising capital for LFS and the benefit of a tax credit to the purchasers.

7a.    In November of 2008, after above referenced meeting between Houser and the Saints coaching staff/personnel, Mr. Patten was informed about the tax credits and was told that Houser was the contact person. Thereafter Plaintiff, David Patten, meet with Kevin Houser to discuss the tax credits.

8.    Defendant Houser acted as a broker in the tax credit transaction involving Plaintiffs (and other Saints players, coaches and staff). Defendant Houser, held a position of confidence and trust with his fellow teammates, including Plaintiffs. Defendant Houser entered into a business relationship with Read, a promoter and purported owner of LFS, a business engaged in the production of commercial and other film ventures.

9.    Defendant Houser was to receive a 5% commission for his actions in raising and brokering the tax credits to be purchased by Plaintiffs and other Saints personnel. Defendant Houser convinced Plaintiff, Drew Brees, to put up $160,000.00 and Plaintiff, David Patten, to put up $116,000.00 and in total raised approximately $2,000,000.00, which would have resulted in a

3

commission to Houser of approximately $100,000.00. Plaintiffs and the other Saints personnel were not informed of the commission.

9a.    On or about December 10 and 12, 2008, Mr. Houser corresponded via email with Mr. Brees' investment advisor, John Palguta. (See Exhibit B) Mr. Houser advised Mr. Palguta that he would be sending additional information to him but was concentrating on beating the Bears. After the game, a second email was sent from Mr. Houser to Mr. Palguta informing him he needed a check from Mr. Brees, address and social security information.

10.    On or about December 14, 2008, Plaintiff, Drew Brees, issued a check, made payable to LFS and personnel gave it to Defendant, Houser, for $160,000.00 for which he was to receive $200,000.00 in state tax credits.

10a.   On or about December 22, 2008, Plaintiff, David Patten, issued a check, made payable to LFS and personnel gave it to Defendant, Houser, for $116,000.00 for which he was to receive $136,470.00 in state tax credits.

11.    While the funds were made payable to LFS, Plaintiffs reasonably believed that their money was to be put in escrow and held in trust until the tax credits were certified by the State of Louisiana and delivered to them on or about March 31, 2009.

12.    Defendant Houser has admitted that the funds were to be held in escrow, however, the money given by Plaintiffs was deposited in the operating account of LFS.   Defendant Houser had previously brokered transactions involving Louisiana Infrastructure Tax Credits and/or Certified

4

Louisiana Film Tax credits. In those transactions, upon information and belief, escrow accounts or other protections were established and maintained to ensure that the purchase funds were not released until the tax credits were issued. In any event, based on prior experience, education, and/or the standards of the profession, Defendant Houser knew or should have known of the necessity to sequester and protect funds intended for the purchase of tax credits from being co-mingled, wasted and/or otherwise expended for purposes for which they were not intended and/or for which not tax credits would be earned.

12a.   The tax credits were committed to Mr. Houser by Louisiana Film Studios and Louisiana Film Studios was relying on Mr. Houser to sell them. (Please see Exhibit C: email from Wayne Reed to Kevin Houser, dated 10-8-2008).

13.   Defendant Houser had given LFS's account number and other banking information to other Saints personnel for them to wire money into the same account for their purchases of tax credits from LFS. Defendant Houser knew this account was an operating account for LFS.

14.   Defendant Houser knew or should have known the account was not an escrow account but rather an Operating Account of LFS as he had conducted business with LFS and received checks written on that account to 47 Construction, LLC, a company owned by Defendant Houser and his wife.

15.   Unknown to Plaintiffs, at the time Defendant Houser was soliciting

5

Plaintiffs to purchase tax credits, Houser and his wife were actually creditors of LFS and had a financial interest in the cash proceeds derived from the sale of the tax credits, all of which Houser failed to disclose to Plaintiffs. Defendant Houser and his wife are owners of 47 Construction, LLC, a Louisiana Limited Liability Company, which had entered into a $26,000,000 construction contract with LFS at the end of 2008.

16. Also unknown to Plaintiffs, Defendant Houser's, company, 47 Construction LLC, was holding onto a check written by LFS on its operating bank account in the amount of two million six hundred thousand dollars ($2,600,000) payable to 47 Construction, LLC. Defendant Houser knew that LFS did not have sufficient funds in its account to honor the check and therefore could not purchase the tax credits Houser was selling to Plaintiffs and others.

16b. Also unknown to Plaintiffs was that Defendant, Kevin Houser, had personally loaned Louisiana Film Studios, $25,000.00 on September 10, 2008. The closing contemplated by this loan was for the exchange of stock and the payment of the purchase price. The loan was to be paid back in the form of state infrastructure tax credits in the amount of $37,500.00. (Please see exhibit D).

17. Despite repeated demands for information on either the issuance of the agreed upon tax credits or the return of funds, Houser continued to represent to Plaintiffs that the tax credits would be delivered, or his money returned to

him. Defendant Houser authored a letter explaining that the tax credits would be issued and the deal was sound and asked Read to place the letter on LFS stationary and send it to the affected Saints personnel, including Plaintiffs. (Please see exhibit E).

18. Houser failed to inform Plaintiffs of his relationship to 47 Construction, LLC or 47 Construction, LLC's relationship to LFS.

19. Upon information and belief, rather than creating an escrow account or another device to protect the Plaintiffs' funds pending delivery of the tax credits, or performing due diligence review to determine whether LFS had such escrow or other devices available, the funds were delivered without such protections which resulted in the funds being wasted, converted and dissipated by LFS and/or others.

19a. Houser was required to file an "Outside Business Activity Notification Form" with his employer, Securities America, Inc. Page 1 of that form lists among other activities the "Louisiana has state income tax credits which I have been able to acquire for sales". Page 2 lists Mr. Houser as a "Tax Credit Rep" and "Help broker Louisiana State Tax Credits to clients from production studio." (See Exhibit F)

20. The tortious and/or negligent mishandling of the purchase proceeds and/or tax credits by Defendant Houser and/or Defendant American Securities constitutes a breach of contractual, professional and fiduciary duties, and fraud giving rise to damages sustained by Plaintiffs, including,

7

without limitation, the purchase price, lost profits and opportunities, substantial expenses, including expenses to investigate Houser's mismanagement, attorney's fees, loss of tax credits and loss of use of his money.

21.    Defendant Houser intentionally withheld from Plaintiffs his financial interest in the transactions he was promoting to them, failed to disclose and intentionally withheld from them the lack of protections to preserve the purchase money, and, as a consequence, is guilty of unfair and bad faith dealings with them and is liable under Louisiana law, specifically La. C. C. art. 1997, for all of Plaintiffs' consequential damages, costs and attorney's fees.

22.    Defendant Houser's failure to disclose all pertinent information regarding his financial interest in the sale of the tax credits amounts to fraud under La. C.C. art. 1953, and Plaintiffs are entitled to damages and attorney's fees under La. C.C. art. 1958.

23.    Further, Defendant Houser is liable to Petitioners under La. C.C. art. 1967 as he induced Plaintiffs to rely to their detriment on Defendant Houser's representations to protect Plaintiffs' purchase money and to deliver the state tax credits, which Defendant Houser has failed to deliver.

24.    In the further alternative, Defendant Houser is liable to Plaintiffs under the doctrine of unjust enrichment as he has been enriched and Plaintiffs has been correspondingly impoverished.

25. At all times relevant herein Defendant Houser was a Registered Representative of and/or agent and/or employee of Securities America acting within the course and scope of this duties.

26. Securities America approved Defendant Houser's outside business activity of Louisiana Tax Credit Sales without doing any investigation and without following the requisite policies and procedures. Defendant Houser submitted his outside business activity reports for review and approval to his father-in-law and supervisor at Securities America, Michael Mandrella.

27. Securities America is liable unto Plaintiff for the actions of Houser under the theory of *respondeat superior.*

28. At all times relevant herein, Defendant Houser was an insured under a policy of insurance issued by American International Specialties Lines Ins. Co., providing coverage for the actions of Houser alleged herein. Pursuant to La. R.S. 22:1269, Plaintiffs are entitled to a direct action against American International Specialties Lines Ins. Co., for the actions and damages caused by Defendant Houser, within the terms and limits of said policy.

29. Defendant Houser intentionally withheld from Plaintiffs his financial interest in the transactions he was promoting to Plaintiffs, failed to disclose and intentionally withheld from Plaintiffs the lack of protections to preserve the purchase money and as a consequence, is guilty of unfair and bad faith dealings with Plaintiffs and is liable under Louisiana law as well as tortious and/or negligent mishandling of the purchase proceeds and/or tax credits.

Defendant Houser's actions constitute a breach of contractual, professional, and fiduciary duties, as well as fraud, giving rise to damages sustained by Plaintiffs, including without limitation, the purchase price, loss of profit and opportunity, substantial expense, including attorney's fees, expert's fees, and loss of use of his money.

30.     Plaintiff requests a trial by jury.

**WHEREFORE,** Plaintiffs, Drew Brees and David Patten, pray that this Amended Complaint be deemed good and sufficient; that after due proceedings be had, there be judgment in his favor and against all defendants as follows:

1. For all actual damages in an amount to be proven at trial or motion, including but not limited to full restitution of all sums paid;

2. For all other damages occasioned by Defendants' actions, omissions, and bad faith actions, and violations of the applicable laws cited herein, including without limitation lost profits and opportunities, substantial expenses to investigate Defendants' mismanagement and inconvenience;

3. For all exemplary damages occasioned by Defendants' bad faith actions and violations of the applicable laws cited herein;

4. For all pre-petition, pre-judgment and post-judgment interest as allowed pursuant to the laws of Louisiana;

5. For all costs of this suit, including without limitation attorney's fees; and,

6. For such other relief as the Court deems just and proper.

Respectfully submitted,

By /s/ DANIEL E. BECNEL, JR.
Daniel E. Becnel, Jr. (Bar# 2926)
Salvadore Christina, Jr. (Bar#27198)
P.O. Drawer H
Reserve, LA. 70084
Telephone:    (985) 536-1186
Telefax:       (985) 536-6445

**Attorneys for Drew Brees and David Patten**