**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DREW BREES and**                                                          **CIVIL ACTION**
**DAVID PATTEN**
                                                                             **NO. 13-4760**

**VERSUS**                                                                   **SECTION "C" (3)**

**KEVIN HOUSER,**
**SECURITIES AMERICA, INC. and**
**AMERICAN INTERNATIONAL**
**SPECIALTIES LINES INSURANCE CO.**

## ORDER AND REASONS

Before the Court is the Renewed Motion for Dismissal under Federal Rules of

Civil Procedure 12(6)(b), or in the alternate, Motion for Summary Judgment, submitted

collectively by the defendants, Kevin Houser, Securities America, Inc., and American

International Specialties Lines Insurance Co. (the "defendants").  Plaintiffs, Drew Brees

("Brees") and David Patten ("Patten"), oppose this motion.  Rec. Doc. 43.

Having considered the memoranda of counsel, the record, and the applicable law,

the Court will PARTIALLY GRANT and PARTIALLY DENY defendants' motion,

granting plaintiffs leave to amend to further articulate their bad faith breach of contract

claim.

## BACKGROUND

The plaintiffs, Drew Brees and David Patten (collectively, the "plaintiffs") filed a

complaint against defendant Kevin Houser ("Houser"), a licensed securities broker with

Securities America, Inc ("SAI"), and a former professional football player with the New

Orleans Saints, for breach of contract and bad faith dealings, breach of fiduciary duty,

fraud, detrimental reliance, and unjust enrichment for a transaction involving the sale of

1

Louisiana Infrastructure Tax Credits.  Rec. Doc 6 at ¶¶4-8.  Plaintiffs claim that, in December of 2008, Houser offered to sell Louisiana Film Tax Credits to his teammates and coaches in order to raise funds for Louisiana Film Studios, LLC ("LFS"). Rec. Doc. 43 at 1.  Plaintiffs further alleged that Houser, who has experience selling Louisiana Film Tax Credits, Rec. Doc. 43-4 at 5, claimed that the tax credits were available as part of the Louisiana Motion Picture Incentive Program as a way to support the production of motion pictures in the State and could be used to offset income taxes owed to the State of Louisiana. Exhibit 1, Rec. Dec. 43-2 at 1-2. Plaintiff, Drew Brees, claims he personally gave a check to Houser for $160,000 to purchase Louisiana Film Tax Credits from LFS, for which he expected a $200,000 return. Brees Aff. Rec. Doc. 43-5 at 2, ¶¶ 1-2. Plaintiff, David Patten, claims he personally gave Houser a check for $116,000 in tax credits from LFS and that he expected a return of $136,470. *Id*. at 1, ¶¶1-2.  Plaintiffs claim that Houser led them to believe that the money would be kept in an escrow account until the tax credits had been certified by the state. Rec. Doc. 6 at 4, ¶¶11-12.  Instead, the money was allegedly deposited directly into the LFS operating fund and was dissipated before the tax credits could be purchased. *Id*.  Neither plaintiff received the promised tax credits from Houser or LFS.  Rec. Doc. 43-1 at 2, ¶8.

In March 2010, the president of LFS, Wayne Read ("Read") was charged with wire fraud and transportation of stolen property in a scheme to sell fictitious 2008 Louisiana Film Tax Credits to persons, including the plaintiffs, thus violating 18 U.S.C. §§1343 and 2314, respectively. Rec. Doc. 37-1 at 3.  He plead guilty and was sentenced in October of 2011. *Id*.  Following Read's indictment, LFS filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court, Eastern District of Louisiana. *Id*. In March 2011, plaintiffs

separately filed proofs of claims against LFS for the amount of their investments in the tax credits.  Rec. Doc 37-3 at 1; Rec. Doc. 37-4 at 1.

Defendants argue that, because the events in question occurred in December of 2008, the plaintiffs' tort claims relating to that event are time-barred by the applicable prescription period under Louisiana Civil Code article 3492, which states that "delictual actions are subject to a liberative prescription of one year" that commences on "the day injury or damage is sustained." La. Civ. Code Ann. art. 3492.  Defendants further argue that the plaintiffs have failed to state a claim for breach of contract, because they have failed to show that a contract ever existed between the plaintiffs and Houser.  Without establishment of a contract between the plaintiffs and defendants, plaintiffs cannot move forward with their claim of bad faith breach of contract. Additionally, defendants contend that plaintiffs have failed to state a claim for breach of professional or fiduciary duty and that Houser owed no such duty to the plaintiffs.

## STANDARD OF REVIEW

**I. Motion to Dismiss:**

To survive a motion to dismiss under the Federal Rule of Civil Procedures 12(b)(6), " a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  The plausibility standard requires plaintiff to allege more than a sheer possibility that a defendant has acted unlawfully. *Id*.  Rather, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Generally, the court accepts all well-pleaded facts as true and views those facts in the light most favorable to the

plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II. Summary Judgment

Summary judgment is proper when there are no genuine issues of material fact in dispute. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when there is sufficient evidence favoring the non-moving party such that a jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). When reviewing the facts for summary judgment, the court will draw all inferences most favorable to the non-moving party. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court should grant summary judgment against the party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of justifying its motion and demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, "if the moving party meets this initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). The alleged existence of a factual dispute will not defeat an otherwise properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, the

non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

## ANALYSIS

**I. Prescription:**

Defendants first seek dismissal and/or summary judgment based on the argument that several of plaintiffs' claims have prescribed. In general, "the party asserting a peremptory exception of prescription bears the burden of proof." *Ames v. Ohle*, 11-1540 (La. App. 4 Cir. 5/23/12) 97 So. 3d 386, 390; decision clarified on reh'g (July 11, 2012), *reh'g denied* (July 11, 2012), *writ denied,* 100 So. 3d 837 (La. 11/9/12), *citations omitted*. The burden of showing that a claim has not prescribed switches to the plaintiff only when prescription is evident from the face of the pleading. *Id.* When courts review a peremptory exception of prescription, they examine all the possible constructions of a prescriptive statute, and courts strictly construe the statutes against prescription and in favor of the claim. *Id*. at 391. The nature of a cause of action, as described in the pleadings, determines which prescriptive period applies. *Id.*

Defendants argue that the plaintiffs' claims of fraud, detrimental reliance, and unjust enrichment are delictual actions with a one-year prescription under Louisiana Civil Code Article 3492, which governs actions in tort. Rec. Doc. 37-1 at 5. Plaintiffs, on the other hand, maintain that these claims all arise from a contractual obligation and therefore have a ten-year prescription governed by Louisiana Civil Code Article 3499. Rec. Doc. 43 at 4. In order to establish whether the claim arises out of a personal action with a ten-year prescriptive period or a delictual action with a one-year proscriptive period, the court

looks to the nature of the duty that was violated. *Strahan v. Sabine Ret. & Rehab. Ctr., Inc.*, 2007-1607 (La. App. 3 Cir. 4/30/08), 981 So. 2d 287, 291.  Contractual damages, generally considered personal actions, arise out of the breach of a special obligation contractually assumed between individuals, while a delictual action stems from the violation of a duty owed to all persons. *Id*.

The first claim asserted in the pleadings is "tortious and/or negligent mishandling of the purchase proceeds and/or tax credits" constituting "a breach of contractual, professional and fiduciary duties and fraud." Rec. Doc 6 at 6, ¶20.  The courts of Louisiana have distinguished breaches of fiduciary duty caused by negligence from breaches of fiduciary duty involving fraud.  *See Ames,* 97 So. 3d at 392; *Young v. Adolph*, 02-67 (La. App. 5 Cir. 5/15/02), 821 So. 2d 101, 106; *Beckstrom v. Parnell*, 97-1200 (La. App. 1 Cir. 11/6/98), 730 So. 2d 942, 947.  While negligent breaches of fiduciary duty are considered delictual actions with a one-year prescriptive period, breaches of fiduciary duty involving deliberate actions, such as fraud, are personal actions and have a ten-year prescriptive period. *Young*, 821 So. 2d at 106.  This gives fiduciaries more accountability for deliberate acts, but also requires plaintiffs to show a higher burden of proof. *Id*.  The injuries in this case occurred on March 31, 2009 when plaintiffs failed to receive the purchased tax credits as promised by Houser and LFS. Rec. Doc. 6 at 4, ¶11; Rec. Doc. 43-6 at 2.  Therefore, the plaintiffs' claim for negligent breach of fiduciary duty has prescribed and should be dismissed.  However, the plaintiffs' claim of deliberate and fraudulent breach of fiduciary duty by the defendant has a ten-year prescriptive period and thus, has not prescribed.

Defendants next argue exemption for prescription on the grounds that plaintiffs' detrimental reliance claim has prescribed.  The claim of detrimental reliance also requires the court to look at the nature of the cause of action to determine if it involves a breach of promise, thereby invoking a ten-year prescription, or a breach of professional duty, thus making it a delictual action with a one-year prescription.  *See City of Alexandria v. Cleco Corp.*, No. 05-1121, 2010 WL 290506, *10 (W.D. La. Jan. 22, 2010); *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 575 F.3d 483, 487 (5th Cir. 2009); *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 479 (5th Cir. 2002).  The general test for the nature of a claim of detrimental reliance is whether it is grounded in *non*feasance in the performance of contractual obligations or *mis*feasance in the performance of a contract for professional services. *City of Alexandria*, 2010 WL 290506 at *10.  In the present case, the plaintiffs allege that Houser induced them to rely to their detriment by promising to protect their money and deliver state tax credits, which Houser failed to do. Rec. Doc. 6 at 7, ¶23.  Applying the prescriptive period most favorable to the maintenance of the claim, *see Ames*, 97 So. 3d at 391, this action represents a breach of promise for failure to perform (nonfeasance) and should, therefore, be governed by a ten-year prescription period.

Whether an actual contract exists between plaintiffs and Houser is not a factor in determining a claim for detrimental reliance. *See Babkow v. Morris Bart, P.L.C.*, 98-0256 (La. App. 4 Cir. 12/16/98), 726 So. 2d 423, 429 ("Louisiana law allows a party to recover under the doctrine of detrimental reliance even if no formal, valid, or enforceable contract existed.").  The three elements examined by the court in a detrimental reliance claim are: "(1) a representation by word or conduct, (2) justifiable/reasonable reliance, and (3) a

change in position to one's detriment because of the reliance." *Bains v. Young Men's Christian Ass'n of Greater New Orleans,* 06-1423 (La. App. 4 Cir. 10/3/07), 969 So. 2d 646 *writ denied*, 07-2146 (La. 1/7/08), 973 So. 2d 727.   The complaint adequately alleges all three of these elements. There is evidence of a promise by the defendant that the purchase of tax credits was a low risk investment and that the tax credits in question would be pre-certified.   Plaintiffs reasonably relied on these promises made by a trusted teammate and experienced broker in Louisiana Film Tax Credits.   Additionally, there is evidence that plaintiffs incurred a detriment as a result of this reliance.   Therefore, the plaintiffs' claim of detrimental reliance should not be dismissed.

The final claim that defendants allege to be time-barred is the plaintiffs' plea for unjust enrichment under La. C.C. art. 2298.   The Louisiana Supreme Court has held that claims for unjust enrichment are personal actions that fall under the rule of quasi-contracts and thus have a ten-year prescriptive period under Article 3544 of the Civil Code. *Minyard v. Curtis Products, Inc.*, 205 So. 2d 422, 433 (La. 1967); *see also Richard v. Wal-Mart Stores, Inc.*, 559 F.3d 341, 345 (5th Cir. 2009).   Thus, the claim of unjust enrichment has not prescribed.

However, for a party to move forward with a claim of unjust enrichment, he or she must have no other remedy under the law. *Walters v. MedSouth Record Mgmt., LLC*, 2010-0352 (La. 6/4/10), 38 So. 3d 241, 24.   The mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment." *Id*.   Here, the plaintiffs seek remedies for their claims under both tort and contract law, and the prescription of the tort claims does not qualify the plaintiffs for recovery under the doctrine of unjust enrichment.   Even if all

claims were prescribed, the plaintiffs would not meet the requirements for unjust enrichment. *See Richard,* 559 F.3d at 345.  Therefore, the plaintiffs' claim of unjust enrichment should be dismissed, not because it is time-barred, but because it is not an available remedy.

## II. *Contra Non Valentem*

As to those claims subject to one-year prescription, plaintiffs ask the Court to apply the doctrine of *contra non valentem* to postpone the commencement of prescription until after the settlement of the class action lawsuit against defendants in June of 2013. Rec. Doc. 43 at 10.  Usually, "prescription begins to run against a party when he has actual or constructive knowledge of the tortious act, the damage caused, and the causal relationship between the two."  *Harsh v. Calogero*, 615 So. 2d 420, 422 (La. App. 4 Cir. 1993).  *Contra non valentem* may apply and toll the prescriptive period in one of four circumstances. *See Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So. 3d 234, 245.

Plaintiffs ask the Court to apply the fourth kind of tolling, often called the "discovery rule." *Id.*  The discovery rule, which is only applied in extreme circumstances, allows for suspension of prescription until "the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant." *Id.*  In this case, the plaintiffs do not provided a reasonable explanation for why they were not aware of the injuries caused by Houser's failure to deliver the tax credits as promised in March of 2009. Rec. Doc 43-6 at 2.  Even taking into account the reassurances of the April 6, 2009 letter, signed by Wayne Read, that the tax credits would be ready shortly, Rec. Doc 43-6 at 3, plaintiffs should have known when they filed their

claims in LFS's Chapter 7 Bankruptcy proceedings in March of 2011, that their money had not been put in escrow as promised and that their investments would not produce the promised returns.  Indeed, they seem to have been aware of their injury as they filed a proof-of-claim. Rec. Doc 37-3 at 1; Rec. Doc. 37-4 at 1. However, even if the Court decided to apply the doctrine of *contra non valentem* to this later date in 2011, any of the plaintiffs' delictual claims would still have prescribed.  There is no basis to extend the start of prescription to the date of the public announcement of Coach Peyton's settlement. Therefore, plaintiffs' *contra non valentem* argument is insufficient to stave off dismissal on the delictual claims which have already prescribed.

## III. Breach of Fiduciary Duty

Defendants also argue, based on the standard applicable to 12(b)(6) motions, that plaintiffs have failed to state a claim for breach of fiduciary duty.  The Court must assess whether the plaintiffs have pleaded specific facts showing the existence of a fiduciary relationship between Houser and themselves. "Whether a fiduciary duty exists, and the extent of that duty, depends upon the facts and circumstances of the case and the relationship of the parties. As a basic proposition, for a fiduciary duty to exist, there must be a fiduciary relationship between the parties."  *Sampson v. DCI of Alexandria*, 07-671 (La. App. 3 Cir. 10/31/07), 970 So. 2d 55, 59.

A fiduciary relationship is defined as a guardian, trustee, executor, administrator, receiver, conservator, or any person acting primarily for another's benefit in matters connected with such undertakings. La. Admin. Code tit. 61, pt. I, § 1168; *see also Sampson*, 970 So. 2d at 60.  Although courts often define a fiduciary relationship as one of great trust, it does not necessarily extend to transactions between friends and other

close personal relationships.  *See Keenan,* 575 F.3d at 488; *Scheffler v. Adams & Reese, LLP*, 06-1774 (La. 2/22/07), 950 So. 2d 641, 648.

      Plaintiffs have failed to plead a fiduciary relationship between themselves and Houser.  They point to no written agreement establishing a fiduciary relationship between parties, which is a requirement of Louisiana law in many, though not all, fiduciary relationships.[1]  Plaintiffs claim that Houser pretended to act in their benefit by not disclosing his own financial connections with LFS, and that he was in a "position of trust" as their teammate. Rec. Doc. 43 at 9.   However, offering a friend a "good deal" does not, by itself, create a fiduciary relationship. *See Kaplan v. Fine*, 94-187 (La. App. 3 Cir. 10/5/94), 643 So. 2d 438, 440, *writ denied*, 94-2703 (La. 1/6/95), 648 So. 2d 926 (finding that being more experienced in business and a well-respected member of the community does not create a fiduciary relationship).  There appears to be no long-term broker/investor relationship between the plaintiffs and Houser, and plaintiffs have failed to plead specific facts showing a relationship between themselves and the defendants that would create a fiduciary relationship.  Accordingly, the defendants' Motion to Dismiss on the claim for breach of fiduciary duty should be granted.

## IV. Bad Faith Breach of Contract:

      Defendants finally argue that plaintiffs' breach of contract claims should be dismissed under 12(b)(6) because they have not and cannot plead the existence of a contract.  A claim of unfair and bad faith dealings, under La. C.C. Art. 1997, must be

---

[1] *See* La. Rev. Stat. Ann. § 6:1124 ("No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.").

preceded by a breach of contract. *Favrot v. Favrot*, 10-0986 (La.App. 4 Cir. 2/9/11) 68 So.3d 1099, 1107.  Thus, to determine whether plaintiffs have asserted enough facts to move forward with their claim on this issue, the Court must first determine whether a contract existed between the parties.

Under Louisiana Civil Code, the four elements of a valid contract are: "(1) the capacity to contract (La.C.C. art. 1918); (2) mutual consent (La.C.C. art. 1927); (3) a certain object (La.C.C. art. 1971); and (4) a lawful cause (La.C.C. art. 1966)." *Gipson v. Fortune*, 45,021 (La. App. 2 Cir. 1/27/10), 30 So. 3d 1076, 1079 *writ denied*, 10-0432 (La. 4/30/10), 34 So. 3d 298.  Defendants challenge plaintiffs' ability to show the second element, mutual consent.

Under Louisiana Law, mutual consent is established through offer and acceptance. La. Civ. Code Ann. art. 1927.  In this case, there is a clear offer and acceptance between the plaintiffs and the seller of the tax credits, LFS.  Houser orally offered to sell them the tax credits and then followed up the offer with a document titled "Tax Credit Summary" Rec. Doc. 43-2 at 1.  Later, LFS directly extended the offer of tax credits at a lower price to appease the buyers for not receiving the promised tax credits on time. Rec. Doc 43-6 at 3.  Plaintiffs' acceptance is evidenced by checks made out to LFS for the purpose of purchasing film tax credits. Rec. Doc. 37-3 at 2; Rec. Doc. 37-4 at 1. These facts clearly establish offer and acceptance between the plaintiffs and LFS. However, plaintiffs fail to establish comparable offer and acceptance on a separate agreement between themselves and Houser.

The only agreement supported by the pleadings is the plaintiffs' agreement to purchase tax credits ostensibly from LFS.  Houser cannot be liable for acting as LFS's

agent or mandatary in this transaction because Houser duly disclosed LFS's role and there is no indication that he exceeded his mandate. *See* La. Civ. Code art. 3016; *Penton v. Healy*, 03-0614 (La. App. 4 Cir. 12/17/03) 863 So.2d 684, 692 ("[G]enerally speaking, an agent is not responsible to third persons where his principal is disclosed."); *Chambers v. Kennington*, 35,079 (La. App. 2 Cir. 9/28/01), 796 So. 2d 733, 738 ("It is well-settled, however, that an agent, or auctioneer, will be personally liable where he or she fails to disclose his or her status as an agent and the identity of the principal."). Nevertheless, the essence of the plaintiffs' cause of action against the defendants is that Houser misrepresented not only his stake in this transaction, but his *role* in it as well. *See* Rec. Doc. 6 at 5, ¶16, 7 ¶22. Houser may be liable for the tax credit transaction if, instead of acting as LFS's agent, he was really acting as its partner in a joint venture to market and sell the tax credits. *See* La. Civ. Code Ann. art. 2817 ("A partner is bound for his virile share of the debts of the partnership."); *see also Cajun Elec. Power Co-op., Inc. v. McNamara*, 452 So. 2d 212, 216 (La. App. 1 Cir. 1984) *writ denied sub nom. Cajun Elec. Power Co-op Inc. v. McNamara*, 458 So. 2d 123 (La. 1984).

When determining if parties have formed a joint venture, the courts in Louisiana look to the laws of partnership. "The prerequisites for establishing a partnership are that both parties intend to have a business relationship between them and that the relationship has all the major characteristics of a partnership." *Porter v. Porter*, 36,007 (La. App. 2 Cir. 6/12/02), 821 So. 2d 663, 671. Louisiana law defines a partnership "as a 'juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.'" *Lang v. Sproull*, 45,208 (La. App. 2

Cir. 4/28/10), 36 So. 3d 407, 412 (quoting La. Civ. Code Ann. art. 2801).  The main difference between a joint venture and a partnership is that in a partnership parties generally share in the responsibility for the general operations of an organization, whereas a joint venture is "usually but not necessarily limited to single transaction." *Smith v. Scott*, 26,849 (La. App. 2 Cir. 5/10/95), 655 So. 2d 582, *writ denied*, 95-1450 (La. 9/22/95), 660 So. 2d 475.  The requirements for a joint venture are not predetermined; rather, the courts consider each case *sui generis* and give just consideration to "the usages and practices characteristic of the particular commercial undertaking sought to be labeled a 'joint venture.'" *Cajun Elec.*, 452 So. 2d at 216.  What constitutes a joint venture is a question of law; however, the existence or nonexistence of a joint venture is a question of fact. *Id.*

The plaintiffs in this case do not offer any evidence of a written agreement between LFS and Houser to enter into a joint venture regarding the selling of the film tax credits.  However, written agreement is not a requirement for joint ventures.  *See Porter*, 821 So. 2d at 671; *Glass v. Berkshire Dev.,* 612 So. 2d 749, 752 (La. App. 5 Cir. 1992). Rather, the plaintiff has the burden of showing that "(1) the alleged partners mutually agreed to form a partnership and to participate in the profits which would accrue from the business in determined proportions; (2) they agreed to share in the losses as well as the profits of the partnership; and (3) the property or stock of the enterprise formed a community of goods in which each party has a proprietary interest." *Porter*, 821 So. 2d at 671.

In this case, the plaintiffs have properly alleged an agreement to share in profits and a community of goods to which Houser and LFS both had proprietary interest.

Houser and LFS had a mutual interest in successfully raising over two million dollars through the sale of film tax credits. Rec. Doc. 6 at 3, ¶9; *see also* Rec. Doc. 6 at 5, ¶15. From this alleged arrangement, Houser would have received a commission of around $100,000, Rec. Doc. 6 at 3, ¶9, and LFS would have raised incoming revenue to honor outstanding debts, including $2.6 million owed to 47 Construction, LLC, a company co-owned by Houser and his wife. *Id.* at 5, ¶16.  Most importantly, Houser was holding onto a check for $2.6 million written by LFS drawn on its operating bank account – the same operating bank account into which LFS deposited plaintiffs' payments for the tax credits. *Id.* Under these circumstances, there was not only an agreement to share profits but also a community of goods to which both Houser and LFS laid proprietary claim.

The complaint does not reveal any agreement to share in losses from the tax credit sale.  However, no agreement to share in losses is required where the parties do not contemplate any losses. *American Fidelity Fire Ins. Co. v. Atkinson*, 420 So. 2d 691, 693 (La. App. 2 Cir. 1982) (citing *Fossier v. American Printing Co., Ltd.*, 130 So. 2d 529 (La. App. 4 Cir. 1961). In this case, Houser is alleged to have colluded with LFS to benefit from the misappropriation of plaintiffs' money by fraud. Rec. Doc. 6 at 5, ¶¶15-16. It makes sense that defendants would not have made specific arrangements for what would happen if their plan was discovered. Under the circumstances, no dismissal is warranted for failure to adequately plead the existence of a contract. Rather, leave of thirty (30) days to amend is granted to clarify their joint ventureship theory.

Defendants argue that even if the Court finds that a contract did exist between the Plaintiffs and Houser, the plaintiffs have failed to plead a bad faith breach under Louisiana Civil Code article 1997. Rec. Doc. 37-1 at 8.  A claim of bad faith requires a

showing of intentional and malicious failure to perform a contractual obligation. La. Civ. Code art. 1997 rev. cmt. b (1984).  "The term bad faith means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives." *Benton v. Clay*, 48,245 (La. App. 2 Cir. 8/7/13), 123 So. 3d 212, 219; *see also Bd. of Sup'rs of Louisiana State Univ. v. Louisiana Agr. Fin. Auth.,* 07-0107 (La. App. 1 Cir. 2/8/08), 984 So. 2d 72, 80 ("[B]ad faith . . . generally implies actual or constructive fraud or a refusal to fulfill contractual obligations, not an honest mistake as to actual rights or duties.")

Defendants argue that plaintiffs have not pleaded specific facts of a malicious or fraudulent failure to perform by Houser.  However, plaintiffs have adequately pleaded that Houser had a personal stake in the financial success of LFS, and that he concealed his considerable financial ties with LFS in the course of his dealing with the plaintiffs. Rec. Doc. 6 at 3 ¶9; Rec. Doc. 6 at 5 ¶¶15-16.  Plaintiffs also allege that Houser was aware that LFS had not established an escrow account to protect the tax credit purchases, and that he knew, because of personal dealings with LFS through his company, 47 Construction, LLC, that the money was going directly into LFS's operating account. Rec. Doc. 6 at 5, ¶¶13-14.

Furthermore, it appears, from e-mails regarding an April 6, 2009 letter from Wayne Read to the plaintiffs, that Houser may have been involved in covering up the injury to the plaintiffs by seeking to delay the exchange of tax credits.  Rec. Doc. 43-6 at 2.  Houser knew that this delay would cost LFS an additional $300,000 that it did not have. *Id*.  Finally, Wayne Read, president of LFS, pleaded guilty to fraud in the sale of these same tax credits. Rec. Doc. 37-1 at 3. Therefore, assuming the tax credit sale was a

16

joint venture between Houser and LFS, plaintiffs have adequately pleaded a cause of action for bad faith breach of contract.

## **CONCLUSION**

For the reasons discussed above, the Defendants' Motion to Dismiss has been GRANTED on the claims of unjust enrichment, negligent and/or tortious breach of contractual, professional and fiduciary duties, and breach of fiduciary duty due to fraud and misrepresentation.  However, the claim of detrimental reliance is a contractual claim with a 10-year prescriptive period, and plaintiffs have met the pleading standards for this claim.  Therefore the motion to dismiss on detrimental reliance is DENIED.

Plaintiffs have pleaded sufficient factual matter to plausibly support a bad faith breach of contract claim based on the theory that defendant Houser was LFS's partner in a joint venture.  The Court grants plaintiffs leave to amend their complaint to clarify this theory.

Accordingly,

IT IS ORDERED that defendants' Renewed Motion to Dismiss or in the Alternative, for Summary Judgment is PARTIALLY GRANTED and PARTIALLY DENIED.  Rec. Doc. 37.

IT IS FURTHER ORDERED that plaintiffs amend their complaint within thirty (30) days to properly specify the basis of their bad faith breach of contract claim.

New Orleans, Louisiana, this 21st day of July 2014.

_____
**HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE**

17